IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
THOMASVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| W. DEXTER HARRISON, | : | |
| MARTIN L. HARRELL, and | : | Criminal Action No. 6:05-cr-17 (HL) |
| CHARLES L. HARRELL, | : | |
| | : | |
| Defendants. | : | |

_____

# ORDER

This matter came before the Court for hearing on the Government's Motion for Inquiry into Potential Conflict of Interest [doc 71] on October 25, 2005. Based on the representations made to the Court by counsel and Defendants, and for the reasons set forth herein, the Court finds no conflict of interest in representation.

**A.   Background**

Sometime in 1997 Martin Harrell retained Mark Brimberry to represent him as a defendant in a civil lawsuit brought by Terra International. W. Dexter Harrison was also named as a defendant in the same lawsuit. Mark Brimberry continued to represent Martin Harrell until 1998, when Mark Brimberry was allowed to withdraw as counsel of record for Martin Harrell.

On July 21, 2005, Martin Harrell was indicted in case number 6:05-cr-16; Martin Harrell was arrested on July 22, 2005. After Martin Harrell was arrested, his father, Charles Ladon Harrell, contacted Mark Brimberry to discuss the procedure for getting bond set. Mark Brimberry has informed the Court that he did not undertake to represent either Martin Harrell

or Charles Harrell as a result of his conversation with Charles Harrell. Rather, Mark Brimberry contacted Eddie Meeks and arranged for Eddie Meeks to represent Martin Harrell.

On August 3, 2005, Charles Harrell was arrested on a complaint. On October 20, 2005, in a superseding indictment in this case, Dexter Harrison was named as a co-defendant along with Martin Harrell and Charles Harrell. Briefly stated, the allegations of the indictment, insofar as they pertain to Martin Harrell and Dexter Harrison, are that Harrison hired Martin Harrell to burn down Harrison's motel, so that Harrison could collect insurance proceeds. After he was indicted, Dexter Harrison retained Jerry Brimberry to represent him in the criminal matter. Jerry Brimberry is the father of Mark Brimberry; Mark Brimberry and Jerry Brimberry are partners in the same law practice.

The Government contends that at various times during the investigation of this case, and in a related civil case, Martin Harrell has given statements suggesting that he does not know Dexter Harrison. In the superseding indictment, Martin Harrell is charged in Count Twelve with making misleading statements in violation of 18 U.S.C. § 1512(b)(3); in Count Thirteen, Dexter Harrison is charged with making misleading statements in violation of 18 U.S.C. § 1512(b)(3). The indictment alleges that Martin Harrell told Georgia Bureau of Investigation special agent Mike Murphy that he had limited contact with Dexter Harrison, knew him only as a neighbor with whom he attended church, and knew him only as a wealthy man who lived in a mansion. With respect to Dexter Harrison, the indictment alleges he testified under oath in a deposition that the only reason he had to speak to either Martin Harrell or Charles Harrell was with regard to a timber deal.

The Government thus contends that it may become necessary for it to present evidence showing that Dexter Harrison and Martin Harrell were acquainted and that this evidence might include the testimony of Mark Brimberry, based on knowledge he acquired during his representation of Martin Harrell during the Terra International litigation. The Government suggests, therefore, that Jerry Brimberry, in his representation of Dexter Harrison, might be called on to cross-examine his law partner and son, Mark Brimberry. The Government has moved to disqualify Jerry Brimberry based on a conflict of interest.

**B.     Analysis**

In determining whether to disqualify Jerry Brimberry, the Court starts with certain well established principles. First, a criminal defendant has a presumptive right to the counsel of his choice and courts should hesitate to disqualify a defendant's chosen counsel. Wheat v. United States, 486 U.S. 153, 164, 108 S. Ct. 1692, 1700 (1988). Second, while there is a presumptive right to counsel of choice, that right is not absolute and is balanced by the competing right to a defense conducted by an attorney who is free of conflicts of interest. Id. at 160, 108 S. Ct. at 1697. Third, when an actual conflict of interest exists, or when a potential conflict of interest exists, such that the client is or may be denied effective assistance of counsel, the attorney may be disqualified. Id. at 164, 108 S. Ct. at 1700; United States v. Martinez, 630 F.2d 361, 362 (5th Cir. 1980). Fourth, if one attorney in a firm has an actual conflict of interest, that conflict is imputed to the all the attorneys, subjecting the entire firm to disqualification. United States v. Ross, 33 F.3d 1507, 1523 (11th Cir. 1994) (citing United States v. Kitchin, 592 F.2d 900, 904 (5th Cir. 1979)).

In Ross, the United States Court of Appeals for the Eleventh Circuit set forth the following guidelines for determining whether disqualification of defense counsel is mandated:

> In deciding whether the actual or potential conflict warrants disqualification, we examine whether the subject matter of the first representation is substantially related to that of the second. Kitchin, 592 F.2d at 904; *see* United States v. James, 708 F.2d 40, 46 (2d Cir.1983). Our goal is to discover whether the defense lawyer has divided loyalties that prevent him from effectively representing the defendant. *See* United States v. Moscony, 927 F.2d 742, 750 (3d Cir.), *cert. denied,* 501 U.S. 1211, 111 S. Ct. 2812, 115 L.Ed.2d 984 (1991). If the conflict could cause the defense attorney improperly to use privileged communications in cross-examination, then disqualification is appropriate. Indeed, it is also true that disqualification is equally appropriate if the conflict could deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications with the former client or to advance the attorney's own personal interest. In short, the court must protect its independent interest in ensuring that the integrity of the judicial system is preserved and that trials are conducted within ethical standards.

Ross, 33 F.3d at 1523.

In this case, therefore, the Court must determine whether any conflicts exist as a result of (1) Mark Brimberry's prior representation of Martin Harrell, (2) Mark Brimberry's contacts with Charles Harrell, and (3) Jerry Brimberry's current representation of Dexter Harrison. The parties have already agreed to waive their rights to conflict-free representation, should any such conflicts exist. Thus, if the Court finds that the circumstances of representation are such that a conflict exists, the Court must next determine whether such conflicts can be waived, or whether disqualification is mandated despite the waivers. Each of the potential areas of conflict are discussed below.

**1.     Mark Brimberry's Contacts with Charles Harrell**

As to Charles Harrell, the record shows that he was not arrested or the subject of a criminal complaint or indictment until August 3, 2005. He contacted Mark Brimberry in July of 2005 on behalf of his son, Martin Harrell. Both Mark Brimberry and Charles Harrell confirm that the merits of Martin Harrell's case were not discussed and that Mark Brimberry did not undertake to represent either Martin Harrell or Charles Harrell, who was not at that time under indictment. Based on the representations made to the Court, therefore, the Court finds that Charles Harrell is not a client, or former client of Mark Brimberry, such that Mark Brimberry or his firm would be prohibited from representing Dexter Harrison in this matter. *See* Ga. R. Prof. Conduct 1.7 & 1.9 (2005). Nor does it appear to the Court that Mark Brimberry has gained any information as a result of his contacts with Charles Harrell that could be used to the disadvantage of either Charles Harrell or Martin Harrell. *See* Ga. R. Prof. Conduct 1.8 (2005). Thus the Court finds no conflict as a result of Mark Brimberry's contacts with Charles Harrell in July of 2005 and, therefore, no conflict which would be imputed to Jerry Brimberry.

**2.     Mark Brimberry's Prior Representation of Martin Harrell**

The Georgia Rules of Professional Conduct prohibit a lawyer who has formerly represented a client in a matter from revealing information relating to the representation except under very limited circumstances. *See* Ga. R. Prof. Conduct 1.9(c)(2) (2005). Thus, unless the client consents, or unless mandated by Georgia Rules of Professional Conduct 1.6 or 3.3, a lawyer must maintain in confidence all information gained in the professional relationship with the client. Pursuant to these Rules, therefore, even though Mark Brimberry might be called as a witness against Martin Harrell, he will not be obliged, nor permitted, to reveal confidences

related to the representation of Martin Harrell in the Terra International litigation, nor will he or his firm be permitted to use such confidences to Martin Harrell's disadvantage. *See* Ga. R. Prof. Conduct 1.9(c)(1) (2005). Thus, one issue presented by Mark Brimberry's prior representation of Martin Harrell is whether Jerry Brimberry's representation of Dexter Harrison could cause him to use privileged communication obtained by the firm during the representation of Martin Harrell.

Based on the representations of the parties, the Court is satisfied that the risk of Jerry Brimberry using privileged communication is minimal. At oral argument, the parties informed the Court that Mark Brimberry represented Martin Harrell for only a very short period before the relationship deteriorated to the point that Mark Brimberry requested that he be allowed to withdraw from representation. More specifically, Martin Harrell stated to the Court that he is of the opinion that very little information was relayed to Mark Brimberry that could now be used against him by Jerry Brimberry. In view of these assurances, the Court is satisfied that no conflict exists as a result of Mark Brimberry's prior representation of Martin Harrell.

Furthermore, the Court finds that Mark Brimberry did not undertake to represent Martin Harrell as a result of Mark Brimberry's conversation with Charles Harrell in July of 2005, and there was no lawyer-client relationship created at that time. Therefore, Jerry Brimberry's representation of Dexter Harrison after Mark Brimberry spoke with Charles Harrell did not create a situation in which a lawyer has undertaken to represent a new client whose interests are materially adverse to the interests of a former client, as prohibited by Georgia Rules of Professional Conduct Rule 1.9, and no conflict is created as to Martin Harrell by Jerry

6

Brimberry's representation of Martin Harrell's co-defendant Dexter Harrison as a result of Charles Harrell's conversation with Mark Brimberry.

**3.     Jerry Brimberry's Representation of Dexter Harrison**

To the extent that there may be any conflicts created by the various representations at issue in this case, they would most likely impact Dexter Harrison. If the scenario suggested by the Government should occur, and Mark Brimberry is in fact called as a witness at trial, then Dexter Harrison's attorney, Jerry Brimberry, will be faced with the unusual task of having to cross-examine his son and law partner in a trial involving a former client of the firm.

The fact that Mark Brimberry may be called as a witness does not, in and of itself, prevent Jerry Brimberry from representing Dexter Harrison. The Georgia Rules of Professional Conduct provide that "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." Ga. R. Prof. Conduct 3.7(b) (2005). However, pursuant to Rule 1.7, Jerry Brimberry may not continue to represent Dexter Harrison "if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client." Ga. R. Prof. Conduct 1.7(a) (2005). Thus, if Jerry Brimberry's duties to his son and law partner were to materially and adversely affect the representation of Dexter Harrison, Jerry Brimberry could not continue to represent Dexter Harrison.

It is conceivable that Jerry Brimberry's relationship with his son and law partner could

prevent him from effectively cross-examining him should Mark Brimberry be called as a witness. As noted by the Eleventh Circuit in Ross, "disqualification is appropriate if a conflict "could deter the defense attorney from intense probing of the witness on cross-examination." Ross, 33 F.3d at 1523. However, both Mark Brimberry and Martin Harrell represented to the Court at oral argument that Mark Brimberry's representation of Martin Harrell was of a very limited nature. Moreover, the Georgia Rules of Professional Conduct prohibit Mark Brimberry from revealing any information related to the representation. Therefore, even if he is called to testify, Mark Brimberry's testimony necessarily will be limited.

While privileged information known to Mark Brimberry will be unavailable for cross-examination, if he is called as a witness, Mark Brimberry, himself, would be fair game for cross-examination. Furthermore, if his testimony is adverse to Dexter Harrison's defense, it will be incumbent upon Jerry Brimberry to conduct a probing cross-examination. Jerry Brimberry has asserted to the Court that he believes that, if necessary, he can effectively cross-examine his son. Knowing that Jerry Brimberry might be called upon to cross-examine his son and law partner, Dexter Harrison has informed the Court that he nonetheless desires to have Jerry Brimberry continue to represent him. The Court is satisfied that, should it be necessary, Jerry Brimberry can effectively cross-examine Mark Brimberry. Nothing has been presented to the Court that suggests otherwise. Accordingly, the Court finds that it is unlikely that Dexter Harrison would be materially and adversely affected should it be necessary for Jerry Brimberry to cross-examine Mark Brimberry.

Jerry Brimberry also may not continue to represent Dexter Harrison where Mark

Brimberry is likely to be called as a witness if doing so would violate Rule 1.9. Thus, Jerry Brimberry may not use information relating to the representation of Martin Harrell to Martin Harrell's disadvantage, nor may he reveal such information. Therefore, even though he may know, or Mark Brimberry may know, information that would be advantageous to Dexter Harrison, they may not use this information to the disadvantage of Martin Harrell or otherwise reveal it. It is conceivable, therefore, that the limitations placed on Jerry Brimberry by Rule 1.9 could limit his ability to cross-examine Mark Brimberry effectively. However, in view of the representations made to the Court about the relationship between Mark Brimberry and Martin Harrell, the Court finds the possibility of such a conflict too remote to persuade the Court as to the existence of a conflict that would warrant removing Jerry Brimberry from the case and denying Dexter Harrison the counsel of his choice.

**C.     Conclusion**

Given the information before the Court at this time, the Court is satisfied that no conflicts exist that demand the disqualification of Jerry Brimberry. Furthermore, Dexter Harrison has been fully advised of the potential conflicts that could arise as a result of his continued representation by Jerry Brimberry and has confirmed with the Court that any such conflicts are waived. Martin Harrell and Charles Harrell have also knowingly waived any such conflicts. Therefore, insofar as the Government's Motion for Inquiry into Potential Conflict of Interest seeks the disqualification of Jerry Brimberry, or the Brimberry firm, the Motion is hereby denied.

At the hearing on October 25, 2005, Martin Harrell and Dexter Harrison agreed to sign written waivers of any potential conflicts of interest. The Court notes that no such written waivers have been filed. Although the Court is of the opinion that no conflicts exist, the Court believes that it would be appropriate to put in writing what the parties agreed to at the hearing. Therefore, the Government and counsel for Defendants Martin Harrell and Dexter Harrison are hereby directed to file signed waivers with the Court.

The parties, defense counsel in particular, are reminded that "[r]esolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation." Ga. R. Prof. Conduct 1.7, comment 15 (2005). Thus, counsel for Defendants should be zealous in their efforts to maintain conflict-free representation and should not hesitate to contact the Court should any doubts arise in the future as to the propriety of continued representation.

**SO ORDERED**, this the 13th day of December, 2005.

s/   Hugh Lawson
**HUGH LAWSON, JUDGE**

mls